IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| OPTIMORPHIX, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Case No. 5:23-CV-00150-RWS-JBB<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS PURSUANT TO 12(B)(6) FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**Page**

I. Introduction ............................................................................................................. 1

II. Statement of Relevant Facts ................................................................................... 1

    A. Patents Asserted Against Microsoft ........................................................... 1

    B. Infringement Allegations ............................................................................ 2

    C. Other OptiMorphix Lawsuits ..................................................................... 6

    D. Meet And Confer Process .......................................................................... 8

III. legal Standard ......................................................................................................... 8

IV. Argument ................................................................................................................ 9

    A. The Complaint Fails To State A Plausible Claim For Patent Infringement ............ 9

    B. OptiMorphix's Allegations Are So Generic That They Mirror Other Actions Against Different Defendants With Different Accused Products. ......................... 13

V. Conclusion ............................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................1, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................1, 8

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) .......................................................................................9, 10, 11

*Celgene Corp. v. Mylan Pharms. Inc.*,
    17 F.4th 1111 (Fed. Cir. 2021)..............................................................................................14

*Chhim v. Univ. of Tex. at Austin*,
    836 F.3d 467 (5th Cir. 2016) ..................................................................................................8

*Diem LLC v. BigCommerce, Inc.*,
    No. 6:17-CV-186, 2017 WL 9935521 (E.D. Tex., May 11, 2017).....................................9, 11

*Golden v. Apple Inc.*,
    No. 2022-1229, 2022 WL 4103285 (Fed. Cir., Sept. 8, 2022) (per curiam) ...........................10

*Golden v. Intel Corp.*,
    No. 2023-1257, 2023 WL 3262948 (Fed. Cir., May 5, 2023) (per curiam) ......................13, 14

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir., Aug. 19, 2013)................................................................................9

*L&W, Inc. v. Shertech, Inc.*,
    471 F.3d 1311 (Fed. Cir., Dec. 14, 2006) ................................................................................8

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir., Feb. 27, 2018)...............................................................................10

*Network Managing Sols., LLC v. AT&T Inc.*,
    No. 16–cv–295 (RGA), 2017 WL 472080 (D. Del., Feb. 3, 2017) ........................................12

*OptiMorphix v. Cisco Sys., Inc.*,
    No. 5:23-cv-00126-RWS-JBB (E.D. Tex. filed Nov. 2, 2023) ................................................6

*OptiMorphix, Inc. v. Alphabet Inc.*,
    1:23-cv-01065-MN (D. Del. filed Sept. 27, 2023) .......................................................6, 7, 14

*OptiMorphix, Inc. v. Amazon.com, Inc.*,
    No. 5:23-cv-00123-RWS-JBB (E.D. Tex. filed Oct. 23, 2023) .................................................6

*OptiMorphix, Inc. v. Broadcom Inc.*,
    No. 5:23-cv-00134-RWS-JBB (E.D. Tex. filed Nov. 20, 2023) ...............................................6

*OptiMorphix, Inc. v. F5, Inc*,
    5:24-cv-00026-RWS-JBB (E.D. Tex. filed Feb. 22, 2024) .......................................................6

*OptiMorphix, Inc. v. Oracle Corp.*,
    C.A. No. 23-1249 (MN) (D. Del. filed Nov. 1, 2023) ..................................................6, 7, 8, 14

*OptiMorphix, Inc. v. VMWare, Inc.*,
    C.A. No. 23-1146 (MN) (D. Del. filed Nov. 1, 2023) .............................................................6

*Raytheon Co. v. Cray, Inc.*,
    No. 2:16-CV-423, 2017 WL 1362700 (E.D. Tex., Mar. 13, 2017) ..........................................9

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
    No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex., June 28, 2016) ..................................8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir., Oct. 16, 2017) ..................................................................................8

*Stragent, LLC v. BMW of N. Am., LLC*,
    C.A. No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex., Mar. 3,
    2017) .....................................................................................................................................13

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................1, 13

I.      INTRODUCTION

Defendant Microsoft Corporation ("Microsoft") moves to dismiss Plaintiff OptiMorphix, Inc.'s ("OptiMorphix's") Complaint under Federal Rule of Civil Procedure 12(b)(6) because its allegations—largely copied-and-pasted from its other complaints against other defendants—fail to identify how any Microsoft product or service infringes any asserted claim.  OptiMorphix asserts ten patents with 247 claims that span various technologies against 20 different Microsoft products and services.  Its Complaint uses a formulaic approach of vague and amorphous allegations that fails to provide Microsoft with any notice as to what is actually accused, much less how or why it is accused.  That is, for each of the ten counts of infringement, OptiMorphix strings together a non-exhaustive laundry list of disparate products and services, as exemplified below:

> Microsoft designs, makes, sells, offers to sell, imports, and/or uses the following products: Microsoft Azure (***including*** Microsoft Azure Encoding, Microsoft Azure AI Video Indexer, Microsoft Azure Media Player, Microsoft Azure Content Delivery Network, Microsoft Azure Front Door, Microsoft Azure Live and On-Demand Streaming, Microsoft Azure Arc, Microsoft Azure Communication Services, and Microsoft Azure Media Services functionality) and Microsoft Teams (collectively, the "Microsoft '105 Product(s)").

Compl. ¶ 246 (emphasis added).  OptiMorphix then generally parrots (or paraphrases) claim language in subsequent paragraphs before concluding that Microsoft infringes.  OptiMorphix fails to include any explanation of how or why many of the claim elements of the asserted patents are met by any of the products or services included in its list.  Such barebones allegations form the prototypical type of pleadings that cannot pass muster under *Twombly* and *Iqbal*.  Thus, the Court should dismiss OptiMorphix's facially deficient Complaint.

II.     STATEMENT OF RELEVANT FACTS

   A.    **Patents Asserted Against Microsoft**

On December 20, 2023, Plaintiff OptiMorphix, Inc. ("OptiMorphix") filed a Complaint against Defendant Microsoft Corp. ("Microsoft") alleging direct, induced, and willful

1

infringement of ten patents it acquired in April 2023: U.S. Patent Nos. 7,031,314 (the "'314 patent"); 7,444,418 (the "'418 patent"); 7,586,871 (the "'871 patent"); 7,616,559 (the "'559 patent"); 7,987,285 (the "'285 patent"); 8,230,105 (the "'105 patent"); 8,429,169 (the "'169 patent"); 8,769,141 (the "'141 patent"); 9,191,664 (the "'664 patent"); and 10,412,388 (the "'388 patent") (collectively, the "Patents-in-Suit"). In broad terms, the Patents-in-Suit relate to managing and processing network data (*see* Compl. ¶¶ 38–39, 45–46, 51–52), network communication links and proxies (*see id.* ¶¶ 58–59), adaptive bitrate management (*see id.* ¶¶ 66–67, 74–75, 90–91, 96), video caching (*see id.* ¶¶ 83–84), and video encoding (*see id.* ¶ 104). Collectively, these ten patents include 49 independent claims and 247 total claims.

### B.   Infringement Allegations

OptiMorphix alleges that at least the following products and services within the "Microsoft Azure" platform infringe one or more of the ten Asserted Patents: Azure Application Gateway, Azure Network Watcher, Azure Firewall, Azure VPN Gateway and Azure Express Route, Azure Encoding, Azure AI Video Indexer, Azure Media Player, Azure Content Delivery Network, Azure Front Door, Azure Arc, Azure Cache for Redis, Azure Live, On-Demand Streaming, Azure Arc, Azure Communication Services, and Azure Media Services. *See id.* ¶¶ 111, 140, 169, 193, 221, 246, 274, 301, 328, 357. Microsoft Azure is a technically complex "cloud platform [of] *more than 200 products and cloud services*," but OptiMorphix identifies only a subset of products and services by name. *What Is Azure?*, MICROSOFT, https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-azure (last visited Mar. 11, 2021) (emphasis added).

Additionally, OptiMorphix accuses Microsoft Teams of infringing the '105 Patent. *Id.* ¶ 246. Like each Microsoft Azure functionality, Microsoft Teams is a multi-faceted and complicated service, but OptiMorphix does not specify which feature of Teams is allegedly

2

infringing.  *E.g.*, *Announcing General Availability of the New Microsoft Teams App for Windows and Mac*, MICROSOFT (Oct. 5, 2023, 8:00 AM), https://techcommunity.microsoft.com/t5/microsoft-teams-blog/announcing-general-availability-of-the-new-microsoft-teams-app/ba-p/3934603 (showing document sharing, transcription, text chat, video chat services, integration of third-party apps, and other features).  Lastly, OptiMorphix accuses the HEVC Video Extension for Windows 10 and Media Foundation H.265 Video Encoder in its allegations for the '388 Patent.  Compl. ¶ 357.  Collectively, Microsoft Azure, Teams, and HEVC/H.265 Encoders are referred to herein as the "Accused Products/Services."

For each Count in its Complaint, OptiMorphix generally parrots (or paraphrases) the language of the representative claims to conclude that Microsoft infringes OptiMorphix's patents, without distinguishing among the Azure accused products and services or providing any substantive explanation.  For example, OptiMorphix's Complaint includes the following conclusory statements that are largely regurgitations of the claim language (claim language in bold/italics) with no supporting documentation, citations, or explanation:

- The Microsoft '314 Products ***comprise a storage component***, ***functionally connected to the processor***, ***responsible for retaining data and instructions that, upon execution by the processor, direct the processor's operations.*** ¶ 114.
- The Microsoft '314 Products contain functionality for ***establishing an initial connection between the client and the service module, and a subsequent connection between the service module and the server when the connection aligns with the predefined service requirements.*** ¶ 119.
- The Microsoft '314 Products ***orchestrate the formation of a connection between the client and the service module, following the protocols and parameters that relate to the classified service criteria.*** ¶ 121.
- The Microsoft '418 Products ***intercept digital multimedia information transmitted between a sender and a recipient, where the data is encoded at the sender using a primary transmission rate.*** ¶ 142.
- The Microsoft '418 Products ***calculate the accessible transmission rate for a connection on the recipient end***, ***in which the estimation process involves determining the roundtrip time for data packets exchanged between the service module and the recipient through the secondary communication channel.*** ¶ 144.

3

- The Microsoft '418 Products *convey transcoded multimedia data to the recipient via the receiver-end connection, utilizing a transmission rate derived from the estimated accessible transmission rate.* ¶ 150.
- The Microsoft '871 Products *detect an event associated with a data communication arriving at the node from a first data network.* ¶ 171.
- The Microsoft '559 Products *contain functionality where if communication disruption occurs over the primary communication link, the alternate communication link is reestablished to facilitate the exchange of information between the client and server.* ¶ 205.
- The Microsoft '285 Products *allocate the optimal session bitrate among audio and video streams to yield ideal bitrates for both, with the allocation partially based on giving precedence to either the audio or video data.* ¶ 225.
- The Microsoft '105 Products *divide this optimal session bitrate between audio and video data to yield the best-suited bitrates for each.* ¶ 250.
- The Microsoft '105 Products *allocate the optimal session bitrate between audio and video media data to produce an optimal audio bitrate and an optimal video bitrate, wherein allocating the optimal session bitrate between audio and video media data is based on a metric selected from a group including a predetermined allocation, a user preference, an optimal performance data, privileging one type of data over the other, and an amount of audio and video media data to be provided.* ¶ 251.
- The Microsoft '105 Products *encode audio and video media data according to the optimal audio bitrate and the optimal video bitrate.* ¶ 256.
- The Microsoft '169 Products *generate an index corresponding to content associated with the received content request by inputting the at least one identified characterization data into a hash function, wherein the generated index is used for identifying, in the cache data structure, an entry associated with the content by comparing the generated index to one or more index fields associated with one or more entries within the cache data structure.* ¶ 286.
- The Microsoft '169 Products *identify one or more descriptors for the content corresponding to the user's request, where these descriptors include the particular content segment associated with the initial request.* ¶ 278.
- The Microsoft '141 Products *apportion the recommended session bitrate among audio and video streams, favoring either audio or video for a higher bitrate as needed.* ¶ 307.
- The Microsoft '141 Products *apportion the recommended session bitrate among audio and video streams, favoring either audio or video for a higher bitrate as needed.* ¶ 307.
- The Microsoft '664 Products *distribute the received ideal session bitrate between the audio and video media data, resulting in an optimal audio bitrate and an optimal video bitrate.* ¶ 334.

- The Microsoft '388 Products *calculate a delta quantization parameter as influenced by the initial quantization parameter, where the function is designed to yield this delta parameter at least in part to achieve a bitrate reduction while sustaining a given quality threshold*. ¶ 363.
- The Microsoft '388 Products *calculate a delta QP based on the initial quantization parameter. This function aims to minimize bitrate while retaining the required video quality.* ¶ 364.

*See* Ex. A (comparing representative claim language with OptiMorphix's allegations).

Where OptiMorphix includes additional detail beyond parroting or paraphrasing representative claim language in its complaint, OptiMorphix merely adds trivial, vague words about basic computer functionality without tying it to any particular Microsoft product or service. For example, OptiMorphix adds vague allegations that could be true for any Internet-connected device, such as that "transmission protocols" perform transmission. Compl. ¶ 153. OptiMorphix alleges that "monitor[ing] network channels" means "enable security protocols" including "encryption standards and/or authentication technology," ignoring that this could refer to thousands of products and services, including ones not owned by Microsoft. *Id.* ¶ 198. OptiMorphix explains generally how caching works without specifying why or how it contends that Microsoft performs *reverse* caching as claimed by the '169 Patent. *See id.* ¶¶ 277–82. OptiMorphix also includes facts that are circular to the claim language, such as that maintaining a communication link means "ensur[ing] uninterrupted data exchange between the client system and server system." *Id.* ¶ 201. In some places, OptiMorphix repeats specific limitations after wording them in slightly different ways. *Compare id.* ¶ 201 *with* ¶¶ 205–07; ¶¶ 253–54 *with* ¶ 251; ¶ 354 *with* ¶ 355.

Additionally, OptiMorphix references standards that Microsoft allegedly uses in its products and services but does not tie the industry standard to the asserted claims. *See id.* ¶¶ 224 (DASH), 228 (AAC, H.264/AVC, CABAC), 230 (MPEG-4, Matroska), 276 (mentioning that Internet requests are HTTP requests over the internet and listing industry-standard ports for HTTP

and HTTPS), 280–82 (HTTP protocol, methods, and directives), 283 (round-robin algorithm and least connections algorithm), 287 (Jenkins and SHA-256 hash functions), 304 (MPEG-DASH), 306 (MPEG-DASH), 308 (MPEG-DASH), 358–59 (H.265/ HEVC), 362 (HEVC). For example, OptiMorphix accuses the Accused Products/Services of implementing HVEC and accuses HVEC of infringing the '388 Patent, but OptiMorphix fails to plead *how* the HVEC standard meets the limitations of the '388 Patent's representative claim. *See id.* ¶¶ 369–70. Instead, OptiMorphix dumps protocol names from the HVEC standard that OptiMorphix alleges are relevant to infringement, without any further explanation. *See id.* ¶ 369.

Though OptiMorphix provides string cites of numerous links to Microsoft Learn within footnotes, those links are not for its allegations of direct infringement. Instead, OptiMorphix cites the websites only to state that Microsoft "provides documentation and training materials" to its customers. *See id.* ¶¶ 134, 162, 187, 215, 240, 268, 295, 322, 351, 380 & nn.14–23.

C.   **Other OptiMorphix Lawsuits**

In addition to suing Microsoft, OptiMorphix has also filed seven other suits against: Oracle Corporation; VMware, LLC; Amazon.com, Inc.; Amazon Web Services, Inc.; Broadcom Inc.; Cisco Systems, Inc.; F5, Inc.; Alphabet, Inc.; Google LLC; and CA, Inc. *See OptiMorphix, Inc. v. Oracle Corp.*, C.A. No. 23-1249 (MN) (D. Del. Nov. 1, 2023); *OptiMorphix, Inc. v. VMWare, Inc.*, C.A. No. 23-1146 (MN) (D. Del. filed Nov. 1, 2023); *OptiMorphix, Inc. v. Amazon.com, Inc.*, No. 5:23-cv-00123-RWS-JBB (E.D. Tex. filed Oct. 23, 2023); *OptiMorphix, Inc. v. Broadcom Inc.*, No. 5:23-cv-00134-RWS-JBB (E.D. Tex. filed Nov. 20, 2023); *OptiMorphix v. Cisco Sys., Inc.*, No. 5:23-cv-00126-RWS-JBB (E.D. Tex. filed Nov. 2, 2023); *OptiMorphix, Inc. v. F5, Inc*, 5:24-cv-00026-RWS-JBB (E.D. Tex. filed Feb. 22, 2024); *OptiMorphix, Inc. v. Alphabet Inc.*, 1:23-cv-01065-MN (D. Del. filed Sept. 27, 2023). OptiMorphix's eight lawsuits include significant patent overlap and raise nearly identical infringement allegations. A comparison of the infringement

6

counts of overlapping Asserted Patents for the Amazon, Broadcom, Oracle, and Cisco complaints demonstrates that only the name of the defendant and accused product/service changed, with a snippet comparing Microsoft with the Amazon complaints reflected below:

> 362. The ~~Amazon~~Microsoft '388 Products, as part of the encoding process use an initial quantization parameter (QP) for encoding each frame or coding unit (CU). In conforming to the HEVC standard, the ~~Amazon~~Microsoft '388 Products must set an initial QP value that serves as the baseline for encoding the decoded frame.
>
> 363. The ~~Amazon~~Microsoft '388 Products calculate a delta quantization parameter as influenced by the initial quantization parameter, where the function is designed to yield this delta parameter at least in part to achieve a bitrate reduction while sustaining a given quality threshold.
>
> 364. The ~~Amazon~~Microsoft '388 Products calculate a delta QP based on the initial quantization parameter. This function aims to minimize bitrate while retaining the required video quality.
>
> 365. The ~~Amazon~~Microsoft '388 Products ascertain a subsequent quantization parameter for the purpose of compressing the decoded frame, based on both the initial and delta quantization parameters.
>
> 366. The ~~Amazon~~Microsoft '388 Products determine a second quantization parameter using the initial QP and the delta QP. The ~~Amazon~~Microsoft '388 Products calculate the second quantization parameter as QP1 + Delta QP. This second quantization parameter is the one used for encoding either the entire frame or specific coding units within the frame.
>
> 367. The ~~Amazon~~Microsoft '388 Products compress the decoded frame utilizing the second quantization parameter.
>
> 368. The ~~Amazon~~Microsoft '388 Products encode the video frames using the newly derived second quantization parameter.

Ex. B; *see also* Exs. C–E (comparing OptiMorphix's Cisco, Broadcom, and Oracle complaints against its Microsoft complaint)

In sum, OptiMorphix raises the same infringement allegations relying on parroted or paraphrased claim language—instead of defendant and product specific allegations—against hundreds of accused products/services from eight different defendants. Tellingly, two other defendants have already moved to dismiss OptiMorphix's complaint in their case for failing to state a claim. Mot. to Dismiss at 11–16, *Oracle*, C.A. No. 23-1249 (MN) (D. Del. Nov. 1, 2023),

ECF No. 16; Mot. to Dismiss at 4–6, *Alphabet Inc.*, 1:23-cv-01065-MN (D. Del. filed Sept. 27, 2023), ECF No. 9.

### D.     Meet And Confer Process

On March 4, 2024, Microsoft reached out to OptiMorphix to outline the deficiencies in its complaint and express its intent to file this Motion to Dismiss. Ex. F at 2. During the parties' meet and confer on March 5, 2024, OptiMorphix refused to amend its Complaint to address the deficiencies, necessitating the present motion. OptiMorphix has shown similar unwillingness to amend its complaints for pleading deficiencies. *See* Mot. to Dismiss at 2, *Oracle*, C.A. No. 23-1249.

## III.    LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations "merely consistent with" liability are insufficient. *See Twombly*, 550 U.S. at 557. To meet the plausibility standard, plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and its claim must be based on "more than a sheer possibility" of liability. *See Iqbal*, 556 U.S. at 678. While Fifth Circuit courts "take the well-pleaded factual allegations in the complaint as true," they "do not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Legal conclusions in a patent infringement action include allegations that an accused product meets an element of the claim language. *Cf. Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

Thus, a plaintiff must "explicitly plead facts to plausibly support" its assertions of direct infringement. *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL

3542430, at *2 (E.D. Tex. June 28, 2016). A plaintiff has the burden of showing that each accused product infringes the asserted claims. *See L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("[Plaintiff] must make a prima facie showing of infringement as to each accused device . . . ."). "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021). Plaintiffs must plead "factual allegations sufficient to give rise to a plausible inference that a device meets *all elements* of a *specific claim*." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-186, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017) (quoting *Raytheon Co. v. Cray, Inc.*, No. 2:16-CV-423, 2017 WL 1362700, at *4 (E.D. Tex. Mar. 13, 2017)) (emphasis in original).

A greater level of detail is required for complex technologies or material elements. *See Bot M8*, 4 F.4th at 1353 (level of detail required depends on "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device"). The significant complexity of this case—with ten patents, 247 claims, and 20 accused products—demands more detail from OptiMorphix. *See Bot M8*, 4 F.4th at 1353 (holding that "[t]he level of detail required . . . will vary" based on "the complexity of the technology . . . and the nature of the allegedly infringing device."); *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) ("The adequacy of the facts pleaded depends on the breadth and complexity of both the asserted patent and the accused product or system and the nature of the defendant's business activities.").

## IV. ARGUMENT

### A. The Complaint Fails To State A Plausible Claim For Patent Infringement

OptiMorphix's copying or paraphrasing of the language of representative claims does not—and cannot—amount to a "plausible claim for infringement." Indeed, OptiMorphix's

9

Complaint fails to set forth evidence or allegations describing *what* feature, functionality, structure, or operation of any Accused Product/Service infringes, nor does it cite *how* or *why* any Accused Product/Service infringes. *See Bot M8*, 4 F.4th at 1352–53 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)); *see also Golden v. Apple Inc.*, No. 2022-1229, 2022 WL 4103285, at *2 (Fed. Cir. Sept. 8, 2022) (per curiam) (finding that a plaintiff "cannot assert a plausible claim for infringement . . . by reciting the claim elements and merely concluding that the accused product has those elements."

OptiMorphix's allegations outside of the claim language itself are threadbare and fail to state how any accused product or service meets the limitations of any patents. For example, in limitation 16[a] for the '105 Patent, OptiMorphix repeats *three times* that "allocating the optimal session bitrate between audio and video media data is based on a metric selected from a group including a predetermined allocation, a user preference, an optimal performance data, privileging one type of data over the other, and an amount of audio and video media data to be provided" but *not once* shows any Microsoft documentation suggesting that the accused products and services have this accused functionality or any explanation of how the accused products and services allegedly include this group. *See* Ex. A. For limitations 16[b]–[c], OptiMorphix does not allege any facts that support the conclusion Microsoft "allocate[s] the optimal session bitrate between audio and video media data to produce an optimal audio bitrate and an optimal video bitrate." *Id.* Every other count similarly includes multiple claim limitations that are entirely devoid of supporting allegations other than parroted or paraphrasing from claim language.

As another example, OptiMorphix accuses Azure Media Player of infringing patents that require transcoding and adaptive bitrate management. *See* Compl. ¶¶ 140, 221, 246, 301, 328, 357. However, the alleged training materials cited by OptiMorphix show that Azure Media Player

10

simply provides automatic playback of content received by user devices. *See, e.g.*, *id.* ¶ 322 (citing *Media Architecture Design*, MICROSOFT (updated Jan. 24, 2024), https://learn.microsoft.com/en-us/azure/architecture/guide/media/start-here). OptiMorphix also accuses an application development platform, Azure Arc, of practicing a patent that requires caching webpage content but none of the alleged training materials OptiMorphix cites mention Azure Arc let alone mention that Azure Arc performs caching of webpage content. *See, e.g.*, *id.* ¶ 294 n.20. Moreover, OptiMorphix accuses an AI video search tool of transcoding and adaptive bitrate management, but the alleged training materials cited by OptiMorphix only show that Azure Media Player performs media analysis capabilities, such as facial detection. *See id.* ¶ 240 n.18 (first citing John Deutscher, *What's New in Azure Video Processing and Video AI*, MICROSOFT (May 7, 2018), https://azure.microsoft.com/en-us/blog/build-2018-what-s-new-in-azure-video-processing-and-video-ai/; and then citing Microsoft Azure, *Six Things to Consider When Using Video Indexer at Scale*, MICROSOFT (Jan. 27, 2020), https://azure.microsoft.com/en-us/blog/six-things-to-consider-when-using-video-indexer-at-scale/). *See id.* ¶¶ 140, 221, 246, 301, 328, 357. OptiMorphix's allegations are either frivolous or "plead[] itself out of court," and certainly fail to place Microsoft on notice. *Bot M8*, 4 F.4th at 1354; *see also Diem*, 2017 WL 9935521, at *2 ("Plaintiff must put Defendant on plausible notice of the claims Defendant may need to defend agains [sic] by identifying a representative claim . . . and providing facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products.").

And though OptiMorphix refers to standards for the '285, '169, '141, and '388, these allegations similarly fall short because OptiMorphix fails to plead which Microsoft Accused Product/Service allegedly utilizes these standards. Compl. ¶¶ 224, 228, 230, 276, 280–82, 283, 287, 304, 308, 358–59, 362, 369–70. For example, according to the webpage cited by Plaintiff, as

11

noted above, Aure Media Player and Azure AI Video Indexer do not perform video encoding, so these products/services cannot utilize the H.265 video encoding standard. *See What's New in Azure Video Processing and Video AI* and *Media Architecture Design*, *supra* (showing that neither product performs encoding). Nor can OptiMorphix plausibly accuse these products/services of infringing the '388 Patent, which requires video encoding.

Moreover, OptiMorphix fails to state how these industry standards would meet the limitations of any asserted claim. For example, OptiMorphix accuses Microsoft products/services allegedly complying with the HVEC standard of infringing the '388 Patent. But OptiMorphix fails to plead how various key limitations are met, including the alleged point of novelty of the patent. *See* Compl. ¶ 105 (describing alleged novelty of the '388 Patent as addressing "shortcomings in the prior art" with "the relationship between the compressed byte size of a video frame and its quantization parameter") The '388 Patent requires the use of "delta quantization parameters" to determine a bitrate; however, OptiMorphix fails to identify what "delta quantization parameters" are used by the accused products/services or the HVEC standard, whether any alleged delta quantization parameter is calculated as a function of the first quantization parameter, or how these "delta quantization parameters" allegedly determine bitrates while maintaining a level of quality at a predetermined level. *Id.* ¶ 370.

Dropping titles of various protocols allegedly from the HVEC standard and merely saying that they are "relevant" to Microsoft's alleged infringement similarly does not cure OptiMorphix's deficient pleading. *See Network Managing Sols., LLC v. AT&T Inc.*, No. 16–cv–295 (RGA), 2017 WL 472080 (D. Del. Feb. 3, 2017) ("Plaintiff knows its own patents [and] [t]he standards are public[,]" so "[s]aying 'on information and belief' that the standards 'incorporate the fundamental technologies' covered by the patents, without more, is insufficient to plausibly allege that to

12

practice the standard necessarily means that a defendant also practices the patent"). In short, OptiMorphix's standards-based allegations suffer from the same flaws as its non-standards-based allegations and should be similarly rejected. *See Stragent, LLC v. BMW of N. Am., LLC*, C.A. No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *5 (E.D. Tex. Mar. 3, 2017) (granting motion to dismiss under FRCP 12(b)(6) for failure to state a claim because the plaintiff did not "explain how the accused products, by complying with the [standard], also infringe.").

### B. OptiMorphix's Allegations Are So Generic That They Mirror Other Actions Against Different Defendants With Different Accused Products.

OptiMorphix's infringement allegations are not tailored to Microsoft or any Microsoft product/service. Instead, OptiMorphix raises the same copied-and-pasted infringement allegations in seven other lawsuits against many other defendants across dozens of different accused products.

As shown in Exs. B–E, OptiMorphix replaces accused product names and company names in its recycled direct infringement allegations against Microsoft. The reason why OptiMorphix was able to copy-and-paste entire allegations from a complaint is that the complaint is filled with broad allegations divorced from content of any specific product (*see* Compl. ¶ 202 ("While generally considered less secure, the second link serves as a contingency, allowing uninterrupted information flow between a client and server")), or gives negligible detail on generic computer functionality (*see id.* ¶ 281 (explaining how HTTP allegedly works)). And when plaintiffs simply copy and paste deficient allegations across multiple matters, dismissal with prejudice is warranted. *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948, at *3 (Fed. Cir. May 5, 2023) (per curiam) (affirming district court's dismissal of complaint with prejudice for plainly deficient copied complaints across numerous companies).

Microsoft and other defendants have made OptiMorphix well aware of the deficiencies in its complaints. Though Microsoft reached out to OptiMorphix to resolve these deficiencies

without motion practice, OptiMorphix is unwilling to file an amended complaint in order to move the litigation forward. *See* Ex. F; Mot. to Dismiss at 2, *Oracle*, C.A. No. 23-1249 (MN) (D. Del. Nov. 1, 2023) (refusing to amend complaint). This mirrors OptiMorphix's approach in other matters where it refuses to properly plead infringement. *See id.* at 11–16; Mot. to Dismiss at 4–6, *Alphabet Inc.*, 1:23-cv-01065-MN (D. Del. filed Sept. 27, 2023). In such circumstances, the Court could properly dismiss OptiMorphix's complaint with prejudice. *See, e.g.*, *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1130–31 (Fed. Cir. 2021) (affirming dismissal with prejudice for complaint when plaintiff knew of pleading deficiencies and did not timely amend); *Golden v. Intel Corp.*, 2023 WL 3262948, at *3.

## V.   CONCLUSION

For these reasons, Microsoft respectfully requests dismissal of OptiMorphix's Complaint in its entirety with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: March 12, 2024 | /s/ *Betty H. Chen* <br> Betty H. Chen <br> LEAD ATTORNEY <br> Texas Bar No. 24056720 <br> Michael R. Rhodes (*pro hac vice*) <br> California Bar No. 319432 <br> DESMARAIS LLP <br> 101 California Street, Suite 3070 <br> San Francico, CA  94111 <br> P: (415) 573-1900 <br> F: (415) 573-1901 <br> BChen@desmaraisllp.com <br> MRhodes@desmaraisllp.com <br><br> Thomas Derbish (*pro hac vice*) <br> D.C. Bar No. 1766840 <br> DESMARAIS LLP <br> 1899 Pennsylvania Avenue, NW, Suite 400 <br> Washington, D.C. 20006 <br> P: (202) 451-4900 <br> F: (202) 451-4901 <br> TDerbish@desmaraisllp.com <br><br> Melissa R. Smith <br> Texas Bar No. 24001351 <br> GILLAM & SMITH LLP <br> 303 S. Washington Avenue <br> Marshall, Texas 75670 <br> P: (903) 934-8450 <br> F: (903) 934-9257 <br> melissa@gillamsmithlaw.com <br><br> *Counsel for Defendant Microsoft Corporation* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically on March 12, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system.

*/s/ Betty H. Chen*
Betty H. Chen